UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,                  :
                                           :
           v.                              :     **MEMORANDUM & ORDER**
                                           :     20-CR-287 (WFK)
AARON SWABY,                               :
                                           :
                       Defendant.          :
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 16, 2022, Aaron Swaby ("Defendant") pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 87 months of imprisonment, to be followed by 3 years of supervised release, forfeiture in accordance with the Order of Forfeiture, and a $100.00 mandatory special assessment.

**DISCUSSION**

**I.    Background**

On November 20, 2019, New York City Police Department ("NYPD") officers stopped Defendant after they observed the vehicle in which he was riding turn without signaling. Presentence Investigation Report ("PSR"), ECF No. 67, ¶ 3. Upon approaching the vehicle, the officers observed Defendant in the front passenger seat and noted the smell of marijuana emanating from the vehicle, as well as ashes on Defendant's lap and front passenger seat, and a burn mark on the front passenger seat. *Id.* When the officers asked Defendant about the marijuana, he replied it was "from an hour ago." *Id.* Officers then asked Defendant to exit the vehicle. *Id.* ¶ 4. Before exiting, Defendant removed his jacket and left it on the passenger seat. *Id.* Officers grabbed Defendant's jacket and discovered a loaded firearm in the jacket pocket. *Id.* They then placed

Defendant under arrest. *Id.* An NYPD firearms analysis subsequently revealed the firearm was previously reported stolen by the Marietta Police Department in Georgia. *Id.* ¶ 9.

After his arrest, Defendant admitted responsibility for the firearm in his jacket, telling officers "it was all me." *Id.* ¶ 4. While incarcerated on Rikers Island, however, Defendant attempted to pressure the driver of the vehicle—Defendant's then-girlfriend—to claim ownership of the firearm. *Id.* When the driver refused, Defendant threatened her. *Id.* Specifically, during a recorded phone call which this Court has reviewed, Defendant told the driver, "When I come home, you better be in Florida. Your family better be in Florida. . . . [I]f I make it back to [Flatbush], you know, you gonna be, you in real trouble." *Id.* ¶ 5; Def. Mem. Ex. A.

Defendant was subsequently released from local custody on bond. *Id.* ¶ 6. While on bond, on June 5, 2020, Defendant was involved in a shooting at a bodega. *Id.* Specifically, Defendant met with another individual, who waited outside while Defendant entered the bodega. *Id.* Inside the store, Defendant began to speak with someone who had been charged as a co-conspirator in one of Defendant's prior gang-related cases. *Id.* The individual who was waiting outside then entered the bodega and shot and killed the person Defendant had been talking to. *Id.* This individual also shot a second person, who survived. *Id.*

On July 23, 2020, the Government filed a Complaint against Defendant, charging him with being a felon in possession of a firearm. ECF No. 1. Prior to his arrest for the instant offense, Defendant had been convicted of, among other things, second degree assault with intent to cause physical injury with a weapon or instrument, a crime of violence punishable by more than one year of imprisonment. Gov. Mem. at 2. On August 6, 2020, a grand jury indicted Defendant for the instant offense. ECF No. 12. On May 16, 2022, Defendant pled guilty to the sole count of the Indictment without a written plea agreement.

2

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. The Court has done so in this case.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005). Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* In this regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

3

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). It addresses each in turn consistent with *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005).

### III. Analysis

**The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on January 15, 1993, in Brooklyn, New York to the nonmarital union of Baron Benacourt and Latonia Banks. PSR ¶ 39. Defendant's father, whom he met for the first time in 2015, lives in Philadelphia, Pennsylvania and works as a security guard. *Id.* Defendant's mother resides in Brooklyn. According to Defendant, he and his mother have a "wonderful" relationship. *Id.* Defendant's mother provided a supportive letter to the Court on behalf of Defendant in advance of today's sentencing hearing. ECF No. 72-1.

Defendant shared he has three maternal half-siblings and one adopted sibling, all of whom reside in Brooklyn. PSR ¶ 41.

Defendant also explained he was primarily raised by his mother and that she "did the best she could" to raise him. *Id.* ¶ 42. Defendant reported no history of abuse of any kind. *Id.* Beyond this, Defendant declined to provide additional information regarding his childhood in his Pre-Sentence Interview ("PSI"). *Id.*

Further, during his PSI, Defendant claimed he was never married or in a relationship and did not have any children. *Id.* ¶ 43. However, defense counsel advised Probation Defendant was in three romantic relationships that produced four children. *Id.* Defendant was in a relationship

4

with Melissa Grant, who also wrote to the Court on Defendant's behalf in anticipation of today's sentencing hearing despite having an order of protection against Defendant. *Id.*; Def. Mem. Ex. 1. Defendant and Ms. Grant have two children together: a 10 year-old son and a 3 year-old daughter. *Id.* Defendant was also previously in a relationship with Yasmine Miller, with whom Defendant shares a two year-old child. *Id.* ¶ 44. In addition, Defendant was formerly in a relationship with Jasmine Prayer, with whom he shares a two year-old child. *Id.*

### 2. Educational and Employment History

Defendant attended Brooklyn School for Career Development but reported he was "kicked out," at which time he started attending Jim Thorpe School in Brooklyn. *Id.* ¶ 53. Defendant stopped attending Jim Thorpe in eleventh grade because he was locally incarcerated. *Id.*

Defendant has been unemployed for much of his adult life. *Id.* ¶¶ 54-58. Defendant worked as a janitor at Best Buy and Burlington in 2018, but reported he left both jobs because he felt he was underpaid. *Id.* ¶¶ 55-56. Defendant reported no other employment history, and has largely been financially supported by his family and girlfriends. *Id.* ¶ 58.

### 3. Prior Convictions

Defendant's criminal history is extensive. *Id.* ¶¶ 25-37. His criminal record dates back to his teenage years and reflects six prior convictions. *Id.* Defendant was 17 years old when he was arrested and criminally charged for the first time for forcibly inserting his penis into a 12 year-old female victim's anus. *Id.* ¶ 25. Defendant was ultimately convicted of sexual abuse in the first degree for this offense and was sentenced to one year of imprisonment. *Id.* As a result of the conviction, Defendant is required to register as a sex offender. *Id.* The New York State Sex Offender Registry reflects Defendant has been classified as a risk level 3, which signifies high risk.

5

*Id.* Because Defendant committed this offense prior to his eighteenth birthday, and the term of confinement for this conviction did not extend into the five-year period preceding the instant offense, this conviction is not accounted for in Defendant's criminal history calculation. Gov. Mem. at 3.

At the age of 19, Defendant pled guilty to petit larceny after he and another individual assaulted a victim, ultimately breaking the victim's arm. PSR ¶ 26. Defendant was sentenced to one year of imprisonment for this offense. *Id.* In June 2014, when Defendant was 21, he was convicted of second-degree assault with intent to cause physical injury with a weapon/instrument and was sentenced to two years' imprisonment. *Id.* ¶ 27. While incarcerated for that conviction, Defendant committed another assault and was later convicted in November 2014 of third-degree assault with intent to cause physical injury. *Id.* ¶ 28.

In November 2015, Defendant was arrested for providing false identification to law enforcement and resisting arrest, for which he was sentenced to 23 months of incarceration. *Id.* ¶ 29. Shortly after Defendant was released, he was arrested yet again, this time for grabbing his then-girlfriend by the neck and slamming her into a wall. *Id.* ¶ 30. Defendant was convicted of third-degree assault with intent to cause physical injury and was sentenced to a conditional discharge and an order of protection. *Id.* Defendant also has two pending charges for failing to report to local law enforcement every 90 days, which he is required to do as a level 3 sex offender. *Id.* ¶¶ 34-35.

Further, Defendant has committed numerous infractions while in custody in relation to the instant offense. *Id.* ¶ 47. Defendant has been incarcerated at the Metropolitan Detention Center ("MDC") since his arrest on July 29, 2020. *Id.* While in federal custody, Defendant has been

involved in at least 23 disciplinary incidents, including fighting, possessing a dangerous weapon, engaging in sexual acts, and interfering with security devices. *Id.*; PSR Addendum, ECF No. 73.

### 4. Medical and Mental Health

Defendant reported no physical or mental health conditions. PSR ¶¶ 49-51. However, while Defendant was on local bond for the instant offense, he was shot in the chest. *Id.* ¶ 50. Probation notes the bullet may still be lodged in Defendant's chest. *Id.*

### 5. Substance Abuse

Defendant reported no substance abuse issues. *Id.* ¶ 52.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's criminal history is serious, and there is a significant need to deter any future criminal conduct. The parties do not dispute this. The Government and Probation argue the serious nature of the instant offense, Defendant's attempt to obstruct the instant investigation, the minimal deterrent effect Defendant's previous terms of incarceration have had on his criminal conduct, and

the general lack of regard for the rule of law this Defendant has shown warrant a lengthy term of incarceration. *See* Gov. Mem. at 4; Probation's Recommendation, ECF No. 67-1, at 1. While defense counsel does not deny Defendant has cycled through the criminal justice system, they argue Defendant has matured after three years in federal detention and is now committed to "turning his life around." Def. Mem. at 2.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of an Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant faces various penalties for committing this offense, including terms of imprisonment and supervised release in addition to fines and a special assessment.

Specifically, Defendant faces a maximum term of imprisonment of ten years, and no minimum term of imprisonment. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant to 18 U.S.C. § 3583(b)(2), Defendant faces a term of supervised release of not more than three years. Defendant is also eligible for not less than one nor more than five years of probation, but one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Further, the Court may impose a fine of not more than $250,000.00 pursuant to 18 U.S.C. § 3571(b). Defendant also faces forfeiture of the firearm seized during Defendant's arrest. Indictment; PSR ¶ 72. The Court is also required to impose a mandatory special assessment of $100.00 per count in accordance with 18 U.S.C. § 3013.

In addition to these penalties, Defendant also faces various collateral consequences as a result of this felony conviction. *See* PSR ¶ 73.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

All parties agree with the Guidelines calculation set forth in the PSR, which proceeds as follows:

The guideline for this 18 U.S.C. § 922(g)(1) offense is USSG §2K2.1, which provides a base offense level of 20 as Defendant was previously convicted of a crime of violence punishable by one year or more of imprisonment. PSR ¶ 14. Two levels are added pursuant to USSG §2K2.1(b)(4)(A) because the firearm Defendant possessed was stolen. *Id.* ¶ 15. Defendant's offense level is increased by two more levels because Defendant willfully attempted to obstruct the administration of justice and Defendant's obstructive conduct related to the offense of conviction. *Id.* ¶ 18.

Defendant's offense level is decreased by two levels pursuant to USSG §3E1.1(a), which accounts for Defendant's acceptance of responsibility. Moreover, Defendant's offense level is decreased by one more level pursuant to USSG §3E1.1(b) because the Government was notified in a timely manner of Defendant's intention to plead guilty. This results in a total adjusted offense level of 21.

As the Court has discussed, Defendant's criminal history is extensive. Defendant's prior convictions result in a criminal history score of 11 and a criminal history category of V. *Id.* ¶ 32.

A total adjusted offense level of 21 combined with a criminal history category of V results in a recommended Guidelines range of imprisonment of between 70 and 87 months. *Id.* ¶ 63.

The parties' Guidelines calculations mirror the analysis above. Moreover, both the Government and Probation recommend a sentence of 87 months—that is to say, a sentence at the top of the Guidelines range. Gov. Mem. at 4; Probation's Recommendation at 1. The Government makes this recommendation based on the seriousness of the instant offense, Defendant's history of recidivism and violent conduct, his general lack of regard for judicial and law enforcement strictures, and his attempt to obstruct justice in the instant case. Gov. Mem. at 4. Similarly, Probation states a sentence of 87 months is appropriate given Defendant's significant criminal history and the seriousness of the instant offense. Probation also notes Defendant's involvement in the June 5, 2020 bodega shooting can serve as a basis for an upward departure. Probation's Recommendation at 1.

Defense counsel argues in favor of a non-Guidelines sentence without recommending a specific term of incarceration. Def. Mem. at 1. The defense argues Defendant "is maturing and committing himself to turning his life around" after three years at the MDC. *Id.* The defense also highlights the "unimaginable conditions of confinement" at the MDC during COVID-19, and argues these conditions constitute a permissible basis for a downward departure. *Id.* at 2-4.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statement here. Finding none on its own, the Court proceeds to the next 3553 factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

10

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court has premised its sentence around the nature and characteristics of *this* Defendant and of the instant crime of conviction. The Court has carefully considered the sentencing options written into the statute and recommended by the Guidelines. In doing so, the Court has ensured the sentence it now imposes will avoid unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is not applicable in this case.

Therefore, as there are no additional factors under section 3553 for the Court to address at this time, the Court is now prepared to announce its sentence.

## IV. CONCLUSION

For the reasons set forth above, the Court determines a sentence of 87 months of imprisonment to be followed by 3 years of supervised release with special conditions, forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report and Addendum, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 8, 2023
    Brooklyn, New York